IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

RICHARD S.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:19-cv-01088-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 11) and the Defendant's Motion for Summary Affirmance (Doc. 14). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Richard S. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on May 26, 2010, alleging disability beginning on February 3, 2006. Richard later amended his alleged disability onset date to March 17, 2010. After his applications for DIB and SSI were denied initially and upon reconsideration, Richard requested a hearing before an ALJ which was held in July 2012. Richard was represented by an attorney at that time, and Richard and

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7, 8) on the docket.

1

a vocational expert (VE) testified. ALJ Gerard J. Rickert issued an unfavorable decision on September 11, 2012.

After appealing that September 2012 decision to this Court, Richard's case was remanded in March 2015. Another hearing was held on September 13, 2016 before a different ALJ, the Honorable Susan F. Zapf (ALJ). At that hearing, Richard was again represented by an attorney, and he, his wife, and the same VE testified. Following that second hearing, Richard's claims were again denied on November 14, 2016. The Appeals Council determined upon Richard's request for review that the ALJ's November 2016 Decision was the final decision of the Commissioner.[2] Richard filed the instant civil action seeking review of the ALJ's Decision on March 13, 2019.

## II

At the September 2016 hearing, Richard was 48 years old and lived with his wife and two sons in an apartment. In an undated Disability Report, Richard claimed the following conditions limited his ability to work: back injury; depression; arthritis in knees, hips, shoulders, elbows, wrists; memory loss; sleep apnea; nerve damage; and foot drop, migraines, and "all joint hips." AR 238. Richard testified that he did not work at all after February 3, 2006.

Richard testified that he had problems with his lower back, and he had a history of fusion surgery and a dorsal column stimulator was put in. He took medications which controlled his pain "[s]omewhat." AR 1651. He did not visit the emergency room because of problems with pain at all recently. He went through "lots" of injections for his back pain. AR 1652. After the stimulator was placed, he still went for injections "[a] few times." AR 1653. He also tried water therapy. He used a single-prong cane. He said his pain on a scale of 1 to 10 where

---

[2] The ALJ's November 2016 Decision is the one under review in this civil action.

10 was the worst pain he could imagine, was generally an 8 or 9 every day with medications. Other than taking his medication, laying down not doing anything would bring Richard's pain level down. He said he had a left foot drop. He thought he could sit for an hour, he thought he could walk not even a block, and it hurt to pick up a gallon of milk.

Richard also testified that he was last hospitalized for depression or anxiety in 2010. When asked whether his condition was pretty well controlled then-currently with his medications, Richard answered, "Still depressed." AR 1654. He thought his difficulties with concentration and attention were more related to pain. He felt like he got no sleep, but his CPAP machine indicated he slept six to eight hours. He said he did no chores around the house except he "might rinse a dish or two, but that's about it." AR 1658. He spent his days walking from room to room in his house, sleeping, and laying around. His wife had to put his shoes and socks on him and had to help him into the shower. He said he did not talk to anybody but his family.

Upon questioning by his attorney, Richard testified that in addition to the cane, he used a walker on a really bad day. He wore a medical back brace when he went out. Trips to the store were "[p]ainful" for him and he used the motorized scooter cart when he went. AR 1663. Though he previously attended physical therapy, he quit "because it really gets aggravated and that's when I get laid up." AR 1664. He confirmed he had problems bending and stooping. He explained the circumstances surrounding his hospitalization for mental health treatment in 2010: his Worker's Compensation award was appealed on the very last day, his family was living where he could not afford the rent and they were going to be kicked out, and he took a handful of Xanax and Vicodin. Since then, he treated with a psychiatrist at the VA. He continued to see the psychiatrist partly for posttraumatic stress disorder as he previously served in the Marine Corps in

3

Desert Storm. He was 70% disabled according to the Department of Veterans Affairs (VA).

Richard's wife next testified followed by the VE. The VE was asked whether the following hypothetical individual the same age as Richard and with the same education and same past work could perform Richard's past work:

> [The individual was] limited to a range of light work with occasional climbing ramps and stairs; no climbing ladders, ropes or scaffolds; occasional kneeling, crouching, crawling, stooping and balancing; limited to unskilled work with simple, routine, repetitive tasks that can be easily resumed if the claimant has momentary distractions in his ability to concentrate and attend; he can have occasional interaction with supervisors and coworkers; no interaction with the public; and he could perform frequent, but not constant bilateral handling and fingering[.]

AR 1683. The VE answered the individual could not perform Richard's past work, but the VE identified both light and sedentary jobs such a hypothetical individual could perform. The light jobs would not remain if the individual had to use a cane to walk. The use of a cane to walk "should pose no problem" in the sedentary jobs. AR 1685.

### III

In her November 2016 Decision, the ALJ determined Richard had the following severe impairments: degenerative disc disease; degenerative joint disease; depression; and anxiety. AR 1622. The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds, and he can only occasionally climb ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl. He can do frequent but not constant bilateral handling and fingering. He can have occasional interaction with supervisors and coworkers, and no interaction with the public. He is limited to unskilled work with

> simple, routine, repetitive tasks that can be easily resumed if the claimant experiences momentary distractions in his ability to concentrate and attend.

AR 1624. The ALJ discussed that Richard alleged physical disability due to back pain. The ALJ highlighted his testimony at the first hearing that he had back problems since 2000, he had surgery in 2003 which helped for a short time, his pain was in his lower back and radiated down both legs but more so on the left, his pain occurred every day, and his medications did not help much. The ALJ also highlighted his second hearing testimony that he continued to treat for back pain with both a primary care physician and an orthopedist and his pain was an 8 or 9 out of 10. The ALJ cited to medical evidence dated 2002, February 2003, 2006, 2007, 2008, 2009, and April 2014 before stating:

> The prior decision found the claimant could perform a range of light work, but the undersigned has given the claimant every benefit of the doubt by limiting him to sedentary work. Further, due to back and leg pain, he cannot climb ladders, ropes or scaffolds, and he can only occasionally climb ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl. He can do frequent but not constant bilateral handling and fingering, due to right shoulder pain.

AR 1625. In support of her conclusion that the record was not consistent with complete inability to work, the ALJ pointed to January – May 2010 records, consultative physician Peter Sorokin, M.D.'s November 2010 internal medicine consultative examination, 2011 and 2012 progress notes, and "new evidence since the last decision" of VA records dated January 2016 and July 2016. The ALJ next considered the medications Richard took as of the first hearing and at the recent hearing, the fact of no hospital or emergency room visits for pain since the alleged onset date, his cane use and other treatments, the fact that some evidence showed muscle atrophy, Richard's daily activities as of the first hearing and recent hearing, and 2010, 2011, and 2016 function reports.

The ALJ concluded Richard was mentally limited by depression and anxiety. She listed his reported symptoms, his testimony that medication did not help, particular testimony from the first hearing, and the fact he was treated in an emergency room in April 2010 after an overdose. The ALJ further concluded the record was not consistent with mental disability, pointing to treatment records since April 2010 including VA treatment records dated between April 2013 and July 2016.

Next, the ALJ concluded that Richard's functional restrictions failed to establish a disabling mental condition where he had mild restrictions in daily activities, moderate restrictions in the ability to socialize, moderate restrictions in the ability to concentrate and attend, and no evidence of episodes of decompensation, a marginal adjustment to the living environment, or an inability to function outside a highly supportive living environment. With regard to the opinion evidence, the ALJ first provided the State Agency reviewing physicians' opinions were given "significant weight" as their conclusions were "generally consistent with the current record" though they did not have the benefit of reviewing the latest medical evidence or assessing Richard's credibility at hearing. AR 1627. In the next paragraph of the Decision, the ALJ provided the State Agency reviewing physicians' opinions "were not given significant weight" because they "did not have the benefit of reviewing the latest medical evidence or assessing whether the claimant's statements at hearing are consistent with medical and other evidence of record." *Id*. Lastly, the ALJ determined Richard's wife's third-party statement was not credible for the reasons Richard's own statements were less than fully credible.

## IV

Richard argues: the ALJ failed to correct the pivotal error identified in the district court remand order regarding limitations arising out of Richard's physical

6

impairments; the ALJ's finding that Richard's allegations are out of proportion to the record constitutes reversible error; though the ALJ tweaked the mental RFC assessment, it is both unsupported and makes no sense; and the ALJ failed to properly assess opinion evidence, and instead offered two findings that were directly contradictory.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566 and 416.966[3]. The establishment of disability under the Act is a two-step process.

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other

8

type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Richard claims error on the ALJ's part at step four.

**A**

An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record").

**1**

Richard first argues that the ALJ took a large and inexplicable leap from the skeletal details she offered of Richard's years of treatment for back pain and mention of only a single objective finding to her finding that Richard could sustain a limited range of sedentary work. He contends the ALJ neglected to include much of the objective evidence of pain and limitation that appeared in the medical record, and the ALJ never mentioned that Richard was also diagnosed with chronic pain disorder. The Commissioner argues the ALJ appropriately recognized that while Richard's later records showed his continuing complaints of back pain they did not show persistent or significant objective findings of severely limited back motion or treatment beyond pain medications. The Commissioner further argues that the combination of normal and abnormal imaging findings also supports the ALJ's RFC determination, and the ALJ did not ignore an entire line of evidence as she explicitly discussed imaging results that supported Richard's alleged disability.

The ALJ cited to medical records which dated back to 2002 and discussed that Richard had a lumbar laminectomy and fusion surgery in February 2003.

Thereafter, Richard did physical therapy in 2006, received back injections in 2007, received more back injections in 2008 and 2009, and had a dorsal column stimulator placed in July 2009. The ALJ noted an April 2014 CT scan showed degenerative changes, and repeated consultative Dr. Sorokin's comment that Richard's November 2010 lumbar x-ray did not show evidence of subluxation, fracture, or bone destruction. The ALJ also discussed that "new evidence" since the last decision consisted of VA records which included progress notes that did "not show persisting and significant objective findings of severely limited back motion or significant neurologic deficits." AR 1625. Additionally, the ALJ cited evidence of Richard's normal gait and station with no neurologic deficits, his ability to walk more than 50 feet without support, his ability to walk on his heels and toes, his ability to get on and off an examination table without difficulty, the normal use of both of his hands, negative bilateral straight leg raise tests, and no sensory or reflex deficits. The ALJ also cited evidence of Richard's decreased motion, tenderness and muscle spasms in his spine, antalgic gait, and some decreased muscle strength.

Specifically, with regard to the ALJ's discussion of the objective medical evidence and how it factored into the physical RFC in this case, the ALJ built a logical bridge between that evidence and her conclusion that Richard remained capable of sedentary work. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion"). The ALJ first determined the medical evidence established Richard had degenerative joint disease and degenerative disc disease, citing a long treatment history for those impairments, surgery, and continuing treatment. However, the ALJ next determined the record was inconsistent with complete inability to work, citing normal examination results and the absence of "persisting and significant" objective findings of severely

10

limited back motion or significant neurologic deficits. The foregoing was the requisite narrative discussion describing how the objective medical evidence in particular supported the ALJ's conclusions that Richard was limited by his back impairments, but not so limited as to be unable to work. The fact that the ALJ's Decision did not exhaustively discuss the objective medical evidence pertaining to Richard's back pain and limitation does not render insufficient the discussion the ALJ provided.

Notably, Richard cites to one specific objective medical record – a November 2011 CT scan – which revealed, among other things, slight height reduction and degenerative narrowing of the facets at the L2-L3 and L5-S1 levels. Given that the ALJ accepted the medical evidence established Richard's degenerative joint disease and degenerative disc disease, the ALJ's failure to mention this one piece of evidence was not harmful error. Moreover, the ALJ was not required to discuss every piece of evidence. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (stating that an ALJ is not required to address every piece of evidence). Similarly, Richard points to *no* objective medical evidence of record (or any other evidence beside Richard's subjective complaints) the ALJ failed to consider in her assessment of his alleged right shoulder pain and limited range of motion. He merely argues in just two sentences that the ALJ failed to explain and it is unclear why she did not include reaching limitations more relevant to shoulder issues than handling and fingering limitations. At worst, the ALJ included limitations in the physical RFC that Richard did not experience (handling and fingering), but those limitations benefited Richard insofar as they further reduced the range of sedentary work he could perform. Richard has not shown this was an error that warrants remand.

Finally, Richard has not shown reversible error due to the ALJ's failure to explicitly mention or discuss Richard's diagnosis of chronic pain syndrome. First, "a diagnosis does not mean someone is disabled, as the Seventh Circuit has

11

repeatedly held." *Brenda L. v. Saul*, 392 F. Supp. 2d 858, 866 (N.D. Ill. 2019) (collecting Seventh Circuit cases). Second, as the Commissioner argues, Richard does not demonstrate how his symptoms from that diagnosis were different from the back pain the ALJ accounted for in the RFC, nor does he point out additional limitations his chronic pain syndrome caused which were not accounted for in the RFC. Richard points to his use of a cane due to pain and balance problems, consultative psychological examiner Erwin J. Baukus, Ph.D.'s diagnosis of chronic pain disorder, Richard's reported increased fatigue, and the referral to a pain clinic he received due to his reported exacerbation of back pain. In her Decision, the ALJ addressed evidence of Richard's use of a cane, his sometimes antalgic and sometimes non-antalgic gait, his continued reports of pain, and the treatments he received to treat that pain. The evidence to which Richard cites reveals that the ALJ's consideration of his chronic pain syndrome would have been redundant of her consideration of his, as Richard puts it, "identifiable musculoskeletal issues."

### 2

Richard also argues the ALJ cherry picked the most benign findings as to his physical and mental impairments, and he otherwise takes issue with the reasons the ALJ determined undermined Richard's claims. The Commissioner counters that the ALJ properly considered Richard's subjective complaints, the ALJ did not ignore or discount Richard's complaints entirely, and Richard's attempt to undermine the ALJ's consideration of his subjective reports amounts to a request that the Court reweigh the evidence.

SSR 16-3p directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3)

are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

Here, the ALJ properly considered the objective medical evidence, as discussed above. The ALJ also considered that Richard's own statements of extreme pain and limitation varied. He stated his pain occurred every day and varied with activity, he could sit no longer than 10 to 15 minutes, could not stand longer than 15 minutes, and his pain was usually at level 8 or 9 out of 10. However, Richard also stated in July 2016 that his back pain was "back to normal" and "tolerable" at pain level 5/10. AR 1625. At the first hearing in July 2012, Richard testified he engaged in activities of daily living including cleaning, cooking, laundry, shopping, driving, and mowing the lawn. Whereas at the second hearing in September 2016 and a Function Report that same month, Richard said he did no chores and his wife sometimes had to help him with personal care. As for the discrepancy in Richard's reported daily activities between the first and second hearings, the ALJ explained, "To the extent that the claimant alleges an increasing inability to complete routine household tasks, his allegations are out of proportion to the objective record and are given reduced weight." AR 1626. Contrary to Richard's passing assertion, the ALJ did not equate Richard's ability to engage in certain daily activities with his ability to function in a competitive work setting.

The ALJ further considered that Richard testified his medications controlled his pain to some degree, there had been no hospital or emergency room visits for pain since the alleged onset date, he used a stimulator implant for his back, he used a cane at times and fell weekly, and he had not undergone continuing

treatment beyond office visits and prescriptions for pain medication. Though Richard believes it was meaningless that his medications controlled his pain, by his own admission, to some degree, the ALJ reasonably considered that admission where "controllable conditions do not entitle one to benefits[.]" *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). With regard to Richard's mental health symptoms, the ALJ listed his reported symptoms of sleep disturbance, decreased energy, feelings of worthlessness, difficulty concentrating, and tearfulness. The ALJ also listed the medications he took for his mental health, his testimony that they did not help and he was "mad at the whole system," and the treatment he received in an emergency room in April 2010 following an overdose and subsequent four-day stay in the hospital. AR 1626. The ALJ also considered Richard's stressors at the time of his emergency room stay, and the fact that Richard did not require a hospital or emergency room for mental symptoms since that April 2010 hospital stay.

In other words, the ALJ properly considered the SSR 16-3p factors. While Richard clearly believes the record overwhelmingly supported a disability finding, the evidence to which he cites does not establish the ALJ cherry picked the record. Much of the evidence to which he cites was, albeit in a summary fashion, cited by the ALJ in the Decision. As the Commissioner argues, the ALJ did not entirely discount evidence of limitation – the ALJ included evidence that both favored limitation and revealed limitation was not to the extent Richard complained. That the ALJ did not discount evidence of limitation is obvious from the ultimate RFC finding which limited him to sedentary work with additional limitations. The ALJ made no error in her consideration of his subjective allegations.

3

Richard next argues that the ALJ gave the mental RFC assessment a superficial facelift as the ALJ failed to accommodate Richard's numerous deficits,

relied upon impermissible assumptions, failed to support her findings with proper analysis, and included a clause that rendered the entire mental RFC assessment meaningless. He says the ALJ cherry picked her way through the record and did not cite to any findings related to the "paragraph B" functional areas. The Commissioner first argues that Richard does not identify any restrictions he claims his impairments merit that are not included in the mental RFC finding and instead attempts to flip the burden onto the ALJ to prove that he was not disabled. The Commissioner also argues the ALJ reasonably considered Richard's relevant objective medical records, considered his mental health records, and reasonably considered Richard's own reports regarding his mental health.

The errors Richard assigns to the ALJ's consideration of his mental impairments are not borne out in the ALJ's Decision. Indeed, the Court can trace the path of the ALJ's reasoning between the mental health evidence of record and her conclusions reflected in the mental RFC. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). As for the "paragraph B" functional areas, the ALJ explicitly explained Richard: had mild restrictions in daily activities given that he performed routine daily activities independently and effectively; had moderate restrictions in the ability to socialize given that he testified he interacted mostly with only immediate family, there was no record of evictions, altercations, or severe social isolation, he told the consultative psychological examiner Dr. Baukus he got along with others, and he was appropriate and cooperative during the interview with Dr. Baukus; and had moderate restrictions in the ability to concentrate and attend and further restrictions were not supported by the record and cited Richard's performance during his psychological consultative examination during which he could recall

15

seven digits forward and five backward, and recent and past memory were intact. The ALJ also explicitly explained there was no evidence of episodes of decompensation, marginal adjustment to the living environment, or an inability to function outside a highly supportive living environment. Elsewhere in the Decision, the ALJ detailed the circumstances of Richard's April 2010 hospital stay following an overdose, and that examinations showed no hallucinations, delusions, further homicidal or suicidal thoughts, intact memory, intact thought processes, grossly intact attention and concentration, cooperation, unremarkable speech and thought processes, no signs of psychosis, denied suicidal or homicidal thoughts, and logical and coherent thought processes. The ALJ also explained that episodes of decompensation meant those lasting for at least two weeks each; thus, Richard incorrectly argues that it was objectively false that he did not have a single episode of decompensation where he says he was hospitalized for just four days for a suicide attempt.[4]

The ALJ minimally articulated her reasons for finding as she did with regard to the "paragraph B" functional areas. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision"). As for Richard's argument that the ALJ cherry-picked her way through the record, Richard notably cites little more evidence pertaining to his mental impairments than the ALJ did in the Decision. For instance, he points out his April 2010 hospital stay, his complaints of decreased energy, feelings of worthlessness, difficulty concentrating, tearfulness, and the demonstration of a depressive order. The ALJ included all that in her Decision. There is nothing in the ALJ's Decision to suggest that she determined

---

[4] Richard cites to a record in which Stage Agency reviewing doctor, Joseph Mehr, Ph.D., checked "One or Two" "Episodes of decompensation, each of extended duration." AR 1180. However, none of Dr. Mehr's notes explained the specific evidence upon which he made that determination, and, again, Richard argues that he was hospitalized for just four days.

16

Richard's symptoms were negated because he did not appear to be "stark raving mad at brief examination." Plf's MSJ (Doc. 11 at pg. 12). Rather, the ALJ fulfilled her responsibility to consider evidence such as Richard's hospital stay, his mental health diagnoses, and his subjective complaints alongside evidence of normal examinations, his daily activities, and the treatment he received for his mental health to determine the *extent* of limitation (not the mere fact of limitation) his mental impairments caused which was supported by the record as a whole. *See* 20 C.F.R. § 404.1527(d)(2) (providing that the final responsibility for deciding a claimant's RFC is reserved to the Commissioner); *and* 20 C.F.R. § 404.1545(a)(1) (the RFC is "the *most* [a claimant] can still do despite [his mental and physical] limitations").

As for the ALJ's accommodation of Richard's moderate social limitations and moderate limitations in the ability to concentrate and attend, the ALJ abided by the relevant authority. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The ALJ limited Richard to only occasional interaction with supervisors and coworkers and no interaction with the public, citing evidence that Richard interacted with only immediate family though there was no evidence of altercations or severe social isolation. The Court can trace the path of the ALJ's reasoning: Richard was able to interact with a select group of people (immediate family and he reported in February 2014 that he socialized with a neighbor) in his daily life, and so the ALJ limited him to interaction in a work setting with a select group of people (coworkers and supervisors).

The ALJ further limited Richard to unskilled work with simple, routine, repetitive tasks that could be easily resumed if he experienced momentary distractions in his ability to concentrate and attend. The hypothetical must

17

"explicitly account for" deficiencies in concentration, persistence, or pace. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). The Court can again trace the path of the ALJ's reasoning: the record supports limitations as Richard complained of concentration difficulties, but the record also included evidence of the extent of limitation as Richard reported his concentration was "ok" when he was with his children, and he was able to pay bills and watch a movie with his children. The ALJ included in the RFC restrictions responsive to such evidence. Richard, however, argues the limitations to simple, routine, repetitive tasks that could easily be resumed if he experienced momentary distractions in his ability to concentrate and attend is both a legally improper assumption and is also absurd. In support of his argument, Richard cites the State Agency psychological consultant's November 2010 opinion which indicated Richard had markedly limited ability to carry out detailed instructions and moderately limited ability to maintain attention and concentration for extended periods, among other things. In this instance, it is Richard who cherry picks the record given the State Agency consultant's comments in the narrative section of his opinion. The State Agency consultant still concluded Richard retained the cognitive ability to remember general work procedures, to understand and remember instructions for simple tasks of a routine and repetitive type, to maintain a schedule, and to adapt to simple changes in daily routines. The State Agency consultant further opined Richard had the attention and concentration sufficient to persevere at and complete simple tasks for time periods commonly expected in the work force, had the pace and endurance to fulfill a normal work day and work week on a consistent basis, and to perform at a consistent acceptable rate. *See* AR 1186. The Court is precluded from re-weighing the aforementioned evidence. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide

questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

### B

Richard contends that the ALJ's "sloppy cutting and pasting" resulted in two contradictory paragraphs regarding the weight she assigned to non-examining State Agency physicians in the Decision. Thus, Richard argues there is nothing other than confusion and no finding at all for this Court to review. The Commissioner admits the ALJ's discussion of those opinions is admittedly less clear than it could be, but the Court can still follow the path of the ALJ's reasoning.

The ALJ's error here was unfortunate. Social Security claimants and reviewing courts reasonably expect more precision in the ALJs' decisions than shown here. Nevertheless, the ALJ's error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). Because the Court has the ability to review the entire record and therefore the previous decision as well as the November 2016 Decision currently under consideration, the Court can see that the ALJ's second paragraph discussing the weight assigned to the State Agency was included for purposes of the 2016 Decision. *See Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (stating that the court reviews the record as a whole to determine whether substantial evidence exists). That paragraph provides that the State Agency physicians' opinions were not given significant weight where they did not have the benefit of reviewing the latest medical evidence or assessing whether Richard's statements at hearing were consistent with medical and other evidence of record. As discussed *supra*, the ALJ properly considered the evidence pertaining to Richard's physical and mental impairments and sufficiently articulated and supported her RFC assessment. Her contradictory explanation of

the weight she gave State Agency reviewing physicians does not change that. Furthermore, it is obvious the ALJ did not give the State Agency opinions significant weight where the most recent opinion in April 2011 indicated Richard was able to perform light/unskilled work whereas the ALJ assessed Richard as capable of only sedentary work.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 11) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Richard S., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on May 26, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE