UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Richard S.,                            )
                                       )
       Plaintiff,                      )
                                       )
v.                                     )    Case No. 19-cv-1088-JES-JEH
                                       )
Commissioner of Social Security,       )
                                       )
       Defendant.                      )

# ORDER AND OPINION

This matter is now before the Court on Plaintiff's Motion (Doc. 11) for Summary Judgment; Defendant's Motion (Doc. 14) for Summary Affirmance; the Magistrate Judge's Report and Recommendation (Doc. 15); Plaintiff's Objection (Doc. 16) thereto; and the Commission's Response to Plaintiff's Objections (Doc. 18). For the reasons set forth below, the Court ADOPTS the Magistrate Judge's Report and Recommendation (Doc. 15); Plaintiff's Motion (Doc. 11) is DENIED, and Defendant's Motion (Doc. 14) is GRANTED.

## BACKGROUND

The facts of this case have been sufficiently detailed in the Magistrate Judge's Report and Recommendation (Doc. 15), which the Court now adopts. The Court thus recounts the facts here in summary fashion.[1] Additional facts will be incorporated as necessary in the discussion section. On May 26, 2010, Richard S. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) alleging disability beginning on February 3, 2006. AR 1691. Richard later amended his alleged disability onset date to March 17, 2010. *See* AR 1620, AR

---

[1] Consistent with the Magistrate Judge's Report and Recommendation (Doc. 15), references to the pages with the Administrative Record (Docs. 7, 8) will be identified by "AR [page number]."

1

1681. His claims were denied initially on November 23, 2010 and upon reconsideration on April 15, 2011. AR 1691. Richard filed a request for hearing concerning his applications for DIB and SSI, which was held before the Honorable Gerard J. Rickert (ALJ) in July 2012. *Id*. At the hearing, Richard was represented by an attorney and a vocational expert (VE) testified. *Id*. ALJ Rickert issued an unfavorable decision on September 11, 2012. AR 1688.

Richard appealed the September 2012 decision to the United States District Court for the Central District of Illinois and his case was remanded in March 2015. AR 1727. On September 13, 2016, another hearing was held before a different ALJ, the Honorable Susan F. Zapf (ALJ). AR 1620. Richard, again, was represented by an attorney and the same VE testified. *Id*. After the second hearing, ALJ Zapf issued an unfavorable decision on November 14, 2016, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 1617-29. In the ALJ's November 2016 decision, she determined Richard had the following severe impairments: degenerative disc disease, degenerative joint disease, depression, and anxiety. *Id*. The impairments caused "more than minimal limitations in the claimant's ability to work." AR 1622. However, the record was not consistent with a complete inability to work and a significant number of jobs existed in the national economy that Plaintiff could perform based on his age, education, work experience, and his residual functional capacity ("RFC"). AR 1629. The ALJ concluded that Plaintiff had the RFC to do the following:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds, and he can only occasionally climb ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl. He can do frequent but not constant bilateral handling and fingering. He can have occasional interaction with supervisors and coworkers, and no interaction with the public. He is limited to unskilled work with simple, routine, repetitive tasks that can be easily resumed if the claimant experiences momentary distractions in his ability to concentrate and attend.

AR 1624. The Appeals Council denied Richard's request for review, making the ALJ's November 2016 ruling the Commissioner's final decision. AR 1497.

Richard filed the instant civil action on March 13, 2019 seeking review of the ALJ's November 2016 Decision. Doc. 1. On May 26, 2020, the Magistrate Judge entered a Report and Recommendation proposing: Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Affirmance be granted. Doc. 15, at 20. Plaintiff timely filed an Objection to the Magistrate Judge's findings. Doc. 16. This Order follows.

## LEGAL STANDARD

When reviewing a decision to deny benefits, the Court "will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court does not displace the ALJ's judgment for its own judgment by reconsidering facts or evidence or making credibility determinations. *Id.*; *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). A decision denying benefits does not have to discuss every piece of evidence, but if an ALJ failed to support her conclusions adequately, then remand is appropriate. *Jelinek*, 662 F.3d at 811. If reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## DISCUSSION

In his Objection, Plaintiff begins with a blanket statement that the ALJ did not and cannot support her findings with "substantial evidence." Doc. 16, at 1. As to the ALJ's specific findings,

Plaintiff takes issue with the ALJ's failure to mention Plaintiff's Chronic Pain Syndrome ("CPS"), the ALJ's assessment of Richard's subjective symptoms, the traceable reasoning for the mental RFC assessment, and a paragraph regarding the state agency physicians' opinions. *Id.* at 4-6. In Response, the Commissioner argues the Court should reject all of Plaintiff's objections because Plaintiff has failed to demonstrate any reversible error in the Magistrate Judge's or ALJ's findings and Plaintiff merely rehashes previously rejected arguments. Doc. 18, at 1. Plaintiff assigns five captions to the arguments in his brief, which the Court will address in turn.

1. **The Court will not reweigh the evidence but rather determine whether the ALJ's findings were supported by substantial evidence**

The caption for Plaintiff's first objection states "(1) Plaintiff does not ask this court to reweigh the evidence; rather, he asks that this court assess whether the ALJ built the requisite logical bridges between the record as a whole and her findings." However, the heading does not correlate to Plaintiff's argument. Instead, Plaintiff begins his objections with an attack on the caselaw citations in the Commissioner's Motion and an accusation that "without the benefit of a Reply from Plaintiff, this court adopted the Commissioner's misleading iteration of Seventh Circuit law." Doc. 16, at 2. Notably, Plaintiff never requested leave to file a reply in the four months after the Commissioner's Motion was filed even though nothing prevented him from doing so. Regardless, the Magistrate Judge did not blindly adopt the Commissioner's iteration of caselaw regarding the standard of review or apply an incorrect standard. *See* Doc. 15 at 7.

> The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal

standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

*Id*. As such, the Magistrate Judge articulated the well-settled standard of review. Moreover, Plaintiff fails to explain his vague assertion that the Magistrate Judge misapplied the law. Rather than simply rubber-stamping the ALJ's decision or giving it "unfettered deference," the Magistrate Judge appropriately reviewed the ALJ's decision. Regardless of how the Magistrate Judge applied the review standard, this Court reviews the ALJ's decisions underlying Plaintiff's objections directly. As discussed below, the Court finds the ALJ's conclusions were reasonable and the ALJ supported her decision with substantial evidence.

### 2. The ALJ did not commit a reversible error by failing to mention Plaintiff's CPS

Plaintiff's remaining objections encompass the same arguments he made before the Magistrate Judge. Plaintiff argues the ALJ's failure to mention Plaintiff's CPS was not a harmless error. Doc. 16, at 4. Plaintiff argues that by failing to consider his CPS, the ALJ ignored the "inability of individuals suffering from chronic, diffuse pain . . . to maintain concentration and effort over the full course of a workday and work week." *Id*. (citing *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004)). Plaintiff further asserts the ALJ's finding in the RFC assessment that limits Plaintiff to unskilled work that allows for "momentary distractions" does not adequately accommodate Plaintiff's "moderate difficulties with concentration, persistence, and pace." *Id*. Plaintiff also claims the ALJ should have re-contacted the physicians that treated Plaintiff to clarify the nature and extent of Plaintiff's pain, and how the pain affects his ability to concentrate on a full-time basis. *Id*. at 4-5 (citing 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; POMS DI 24580.025.). Therefore, the ALJ's failure to consider CPS in assessing non-exertional limitations warrants remand. The Commissioner characterizes this objection as asking the Court

to re-evaluate the claim simply because Plaintiff does not agree with the outcome. Doc. 18, at 3. The Commissioner also points out that Plaintiff does not point to any legal error on the part of the Magistrate Judge. *Id*.

Just as the Magistrate Judge concluded, Plaintiff, again, "does not demonstrate how his symptoms from that diagnosis were different from the back pain the ALJ accounted for in the RFC, nor does he point out additional limitations his chronic pain causes which were not accounted for in the RFC." Doc. 15, at 12. Furthermore, the Seventh Circuit has repeatedly held "a diagnosis does not mean someone is disabled[.]" *Id.* at 11-12 (quoting *Brenda L. v. Saul*, 392 F. Supp. 2d 858, 866 (N.D. Ill. 2019) (collecting Seventh Circuit cases) (internal quotation marks omitted)). Here, the Magistrate Judge also noted, "Richard points to his use of a cane due to pain and balance problems, consultative psychological examiner Erwin J. Baukus, Ph.D.'s diagnosis of chronic pain disorder, Richard's reported increased fatigue, and the referral to a pain clinic he received due to his reported exacerbation of back pain." *Id.* at 12. But "the ALJ addressed evidence of Richard's use of a cane, his sometimes antalgic and sometimes non-antalgic gait, his continued reports of pain, and the treatments he received to treat that pain." *Id*. Thus, based on the evidence Richard cites, "the ALJ's consideration of his [CPS] would have been redundant of her consideration of his, as Richard puts it, 'identifiable musculoskeletal issues.'" *Id*.

In his Objection, Plaintiff focuses on the concentration aspect of CPS. However, as the Commissioner points out in its Response, Plaintiff only states that CPS can generally cause issues with concentration, but he does not cite anything in the record supporting that Plaintiff specifically experienced these issues due to CPS. Doc. 18, at 3. Instead, Plaintiff makes cursory remarks. Doc. 16, at 4. Even so, Plaintiff's disagreement with the ALJ's accommodation for his "moderate difficulties with concentration, persistence, and pace" effectively asks the Court to

weigh the merits of the ALJ's decision. The Court's role is to focus on whether the ALJ applied the correct legal standard and supported her decision with substantial evidence. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The ALJ concluded, "he is limited to unskilled work with simple, routine, repetitive tasks that can be easily resumed if the claimant experiences momentary distractions in his ability to concentrate and attend." AR 1624. This case is distinguishable from cases where the Seventh Circuit has found fault in an RFC assuming that work with simple, routine, and repetitive tasks appropriately accounts for concentration issues. Nor is there a categorical rule "that an ALJ may never accommodate 'moderate' limitations in concentration, persistence, and pace with only a restriction to simple instructions and tasks." *Lothridge v. Saul*, No. 20-1269, 2021 WL 37503, at *6 (7th Cir. Jan. 5, 2021). Here, the ALJ went further to add that the work includes tasks which "can be easily resumed if the claimant experiences momentary distractions in his ability to concentrate and attend." AR 1624. In this vein, the ALJ determined Plaintiff's ability to perform all or substantially all of the requirements of sedentary work was further "impeded by additional limitations." AR 1628. Therefore, the ALJ decision also noted that the VE testified that there were jobs in the national economy for a hypothetical individual with the claimant's age, education, work experience, and residual functional capacity. *Id*. After presenting a hypothetical to the VE encompassing the RFC's restrictions, the expert identified various jobs the individual would be able to perform. AR 1628-29. The ALJ further found the record did not support additional restrictions. AR 1627. She remarked that Dr. Baukus "noted that the claimant could recall seven digits forward and five backward. Recent and past memory were also intact (Exhibit B-36F). There is no evidence of episodes of decompensation, a marginal adjustment to the living environment or an inability to function outside a highly supportive living environment." *Id*. The ALJ also noted in October

2010 record, Dr. Baukus reported that Plaintiff's attention and concentration were grossly intact. AR 1626. The Court finds the limitations account for the functional limitations that could reasonably be expected to result from Plaintiff's moderate concentration impairments and the Court can trace the ALJ's reasoning.

The Court also agrees with the Magistrate Judge's further remarks on the concentration difficulties. "[T]he record supports limitations as Richard complained of concentration difficulties, but the record also included evidence of the extent of limitation as Richard reported his concentration was 'ok' when he was with his children, and he was able to pay bills and watch a movie with his children." Doc. 15, at 18. Additionally, the Magistrate Judge responded to Plaintiff's argument and citation to the "State Agency psychological consultant's November 2010 opinion which indicated Richard had markedly limited ability to carry out detailed instructions and moderately limited ability to maintain attention and concentration for extended periods, among other things." *Id*. The Magistrate Judge observed that Plaintiff "cherry-picked" the record in this instance because the state agency consultant "still concluded Richard retained the cognitive ability to remember general work procedures, to understand and remember instructions for simple tasks of a routine and repetitive type, to maintain a schedule, and to adapt to simple changes in daily routines." *Id*. Thus, the consultant determined Plaintiff "had the attention and concentration sufficient to persevere at and complete simple tasks for time periods commonly expected in the work force, had the pace and endurance to fulfill a normal work day and work week on a consistent basis, and to perform at a consistent acceptable rate." *Id*.

In a brief remark, Plaintiff seems to take issue with the ALJ's consideration of his symptoms of fatigue. Doc. 16, at 5. The ALJ did not completely disregard Plaintiff's symptoms of fatigue and an "ALJ is not required to discuss every snippet of information

8

from the medical records that might be inconsistent with the rest of the objective medical evidence." *See Pepper*, 712 F.3d at 363. The ALJ did state the record fails to establish objective evidence that chronic fatigue syndrome resulted in minimal work-related limitations. AR 1622. At the same time, the ALJ also concluded that Plaintiff's reported symptom of fatigue was credible to the extent that he is limited to sedentary work, which requires only occasional standing and walking. AR 1625. As noted above, the Magistrate Judge correctly found, in response to Plaintiff's comments regarding pain and fatigue, "the ALJ addressed evidence of Richard's use of a cane, his sometimes antalgic and sometimes non-antalgic gait, his continued reports of pain, and the treatments he received to treat that pain." Doc. 15, at 12. As such, Plaintiff has not identified any grounds for remand regarding the ALJ's failure to explicitly discuss Richard's diagnosis of chronic pain syndrome.

### 3. The ALJ did not err in weighing Plaintiff's opinion testimony

Using vague language, Plaintiff asks the Court to re-evaluate the ALJ's analysis of Plaintiff's subjective symptoms because the ALJ "cherry-picked" the record, based findings on "impermissible inferences," and "reasoning that was not readily traceable." Doc. 16, at 5. Plaintiff claims the Magistrate Judge had to unduly scour the record to find a logical bridge in the ALJ's analysis, therefore, "the court may have been damning with faint praise." *Id*. For the remainder of his argument, Plaintiff simply refers the Court to a portion of his initial memorandum. *Id*. (citing Doc. 11, at 14-15). Contrary to Plaintiff's assertion, it would not cause "undue repetition" for Plaintiff to articulate his specific objections to the Magistrate Judge's Recommendation and Report rather than referring the Court to pages in his Motion for his blanket objection regarding subjective symptoms and his next objection regarding the mental

9

RFC assessment. *See* Local Rule 72.2(B) "Any party may object to a magistrate judge's report and recommendation . . . Such objection must *specifically identify the portions* of the report and recommendation to which objection is made and the *basis for the objection* and must be accompanied by a memorandum of law in support of the objection." (emphasis added). *Accord* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Coupling vague phrases with blanket citations hardly satisfies the rule requiring specific written objections and the basis for those objections. Instead, Plaintiff's brevity could be characterized as an undeveloped argument, subject to waiver. *See Pike v. Colvin*, No. 09 C 4351, 2015 WL 6756264, at *3 (N.D. Ill. Nov. 5, 2015) (applying *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) to reject undeveloped arguments in a social security appeal); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39, 2014 WL 114173 (N.D. Ill. 2014) (same); *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) ("[Plaintiff's] arguments about the RFC determination are 'perfunctory and undeveloped' so they are waived").

Plaintiff's Objection offers nothing but vague assertions regarding the ALJ's consideration of Plaintiff's symptoms. Plaintiff's Motion does provide further detail to Plaintiff's brief objection and argues the ALJ dismissed Plaintiff's claims because the ALJ found him untruthful or not credible. Doc. 11, at 14. Even if *arguendo* Plaintiff has not waived his objection, the ALJ did not improperly base her decision on a credibility determination, rather, she properly considered the SSR 16-3p factors. At the outset, it is worth reiterating, "there is no presumption that the statements of claimants seeking disability benefits are true absent conclusive evidence that they are exaggerating their symptoms." *Hostutler v. Berryhill,* No. 18-CV-2117-JES-EIL, 2019 WL 3318111, at *4 (C.D. Ill. July 24, 2019) (quoting *Boeck v. Berryhill*, No. 16-C-1003, 2017 WL 4357444, at *16 (E.D. Wis. Sept. 30, 2017) (internal

quotation marks omitted)). Otherwise, "it would be a strange (and likely insolvent) system" if it was "required that applicants be awarded such valuable benefits whenever an ALJ in a non-adversary proceeding was unable to conclusively refute each subjective complaint of pain and disability a claimant makes." *Id*. Similarly, as the Magistrate Judge correctly pointed out, Plaintiff has the burden of persuasion and production in steps one through four. Doc. 15, at 8.

In reviewing the ALJ's consideration of Plaintiff's subjective complaints, the Magistrate Judge thoroughly discussed how the ALJ considered Plaintiff's subjective complaints and traced the ALJ's reasoning in his Recommendation and Report. *See id*. at 12-14. As the Magistrate Judge highlighted, "SSR 16-3p directs the ALJ to focus on the 'intensity and persistence of the applicant's symptoms.'" *Id*. at 12 (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016)). Pursuant to SSR 16-3p, all evidence, "including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id*. Additionally, the factors in 20 C.F.R. § 404.1529(c)(3) are to be considered. *Id*. These factors include: "claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms." *Id*. at 13 (citing SSR 16-3p, at *7-8).

With the SSR 16-3p factors in mind, the Magistrate Judge stated, in addition to objective medical evidence,

> The ALJ also considered that Richard's own statements of extreme pain and limitation varied. He stated his pain occurred every day and varied with activity, he could sit no longer than 10 to 15 minutes, could not stand longer than 15 minutes, and his pain was usually at level 8 or 9 out of 10. However, Richard also stated in July 2016 that his back pain was "back to normal" and "tolerable" at pain level 5/10. AR 1625. At the first hearing in July 2012, Richard testified he engaged in

11

activities of daily living including cleaning, cooking, laundry, shopping, driving, and mowing the lawn. Whereas at the second hearing in September 2016 and a Function Report that same month, Richard said he did no chores and his wife sometimes had to help him with personal care. As for the discrepancy in Richard's reported daily activities between the first and second hearings, the ALJ explained, "To the extent that the claimant alleges an increasing inability to complete routine household tasks, his allegations are out of proportion to the objective record and are given reduced weight." AR 1626. Contrary to Richard's passing assertion, the ALJ did not equate Richard's ability to engage in certain daily activities with his ability to function in a competitive work setting. The ALJ further considered that Richard testified his medications controlled his pain to some degree, there had been no hospital or emergency room visits for pain since the alleged onset date, he used a stimulator implant for his back, he used a cane at times and fell weekly, and he had not undergone continuing treatment beyond office visits and prescriptions for pain medication.

*Id.* at 13-14. In reviewing the ALJ's consideration of Plaintiff's mental health symptoms, the Magistrate Judge noted,

> The ALJ listed his reported symptoms of sleep disturbance, decreased energy, feelings of worthlessness, difficulty concentrating, and tearfulness. The ALJ also listed the medications he took for his mental health, his testimony that they did not help and he was "mad at the whole system," and the treatment he received in an emergency room in April 2010 following an overdose and subsequent four-day stay in the hospital. AR 1626. The ALJ also considered Richard's stressors at the time of his emergency room stay, and the fact that Richard did not require a hospital or emergency room for mental symptoms since that April 2010 hospital stay.

*Id.* at 14. The Magistrate Judge ultimately found the ALJ properly considered the SSR 16-3p factors, Plaintiff's evidence did not show the ALJ cherry-picked the record, and "the ALJ included evidence that both favored limitation and revealed limitation was not to the extent Richard complained." *Id.* at 14. For example, the ultimate RFC finding showed the ALJ did not discount evidence of limitation because she limited him to sedentary work with additional limitations. *Id*.

The Court agrees with the Magistrate Judge's analysis. Here, the ALJ properly assessed the extent to which Plaintiff's subjective allegations were consistent with and supported by other record evidence, including the objective evidence. An ALJ will look to the claimant's reported

activity levels and treatment he has received, which the ALJ did here. For example, as Plaintiff remarked, hospitalization records are not required to show a mental impairment. But it is not unreasonable that the ALJ included this fact as the extent of a claimant's treatment outside of medications is a factor to consider. 20 C.F.R. § 404.1529(c)(3). Likewise, moderate limitations, on their own, do not necessarily mean a claimant is disabled. *Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015). However, the ALJ concluded that the aggregate of Plaintiff's impairments did not equate to a finding of disability.

The ALJ explained the applicable analysis in her consideration of Plaintiff's symptoms and compared the witness' statements to the medical record:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, and limiting effects of the pain or other symptoms are not substantiated by the objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

AR 1624. This type of analysis is consistent with the applicable standard. *See* SSR 16-3p; 20 C.F.R. §§ 404.1529(a)-(c); 20 C.F.R. §§ 416.929(a)-(c). The ALJ explained the perceived inconsistencies between Plaintiff's daily activities and the medical evidence. "An ALJ may consider a claimant's daily activities when assessing credibility, *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007), but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek*, 662 F.3d at 812 (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Carradine*, 360 F.3d at 755; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Furthermore, an ALJ is in the best position to observe witnesses

and examine evidence, therefore a district court will not disturb the ALJ's credibility determination so long as the ALJ found some support for it in the record. *Horr*, 743 F. App'x at 20; *Dixon v. Massanari*, 270 F.3d 1171, 1178–79 (7th Cir. 2001); *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). *See also Summers*, 864 F.3d at 528 ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'") (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)).

Here, the ALJ compared Plaintiff's symptoms to other evidence such as medical visits, VA treatment records, updated medical records from 2016, psychiatric history, his daily activities, the extent he used a cane, how he described his interactions with others, Plaintiff's description of his pain levels, his medication list and the extent his medications could control his pain, and a lack of decompensation episodes. To the extent Plaintiff argues the ALJ did not mention "enough" evidence, the ALJ did not ignore an entire line of evidence and "an ALJ's adequate discussion of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *See Pepper*, 712 F.3d at 362 (internal citations and quotations marks omitted). As such, the ALJ applied the appropriate standard in her consideration of Plaintiff's symptoms and supported her conclusions with substantial evidence.

### 4. The ALJ's mental RFC determination was supported by substantial evidence

In his Objection, Plaintiff again argues that the ALJ did not minimally articulate the reasoning between the Plaintiff's mental health evidence of record and the ALJ's conclusions in the mental RFC. Doc. 16, at 5 (citing *Moon v. Colvin*, 763 F.3d at 721). Specifically, Plaintiff questions the logic between an ability to interact with family members and a neighbor, and the ability to interact with co-workers. *Id*. Then, Plaintiff again refers the Court to his Motion for his argument on this point. *Id.* at 6 (citing Doc. 11, at 10-14). In its Response, the Commissioner

argues ALJ's decisions are read as a whole, minimal articulation is the standard regardless of whether Plaintiff's agrees with it, and the Magistrate Judge "did not need to scour the record, as Plaintiff claims" to find the ALJ's reasoning. Doc. 18, at 4-5.

Seeing as Plaintiff only raised one specific objection regarding the mental RFC in his Objection then referred the Court to five pages of his previous Motion, it unclear whether he is re-raising all of the same objections contained within those five pages or only objecting to the social limitations in the RFC. Nor does plaintiff show that the RFC assessment should have included additional mental functioning limitations. Regardless, the ALJ needed to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000). As the Magistrate Judge noted, the ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Here, the Court can trace the ALJ's reasoning.

An RFC is a measure of "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). When determining a claimant's RFC, the ALJ must consider all medically determinable physical and mental impairments, both severe and nonsevere. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). An ALJ's RFC assessment must consider both the medical and nonmedical evidence in the record. *Dixon*, 270 F.3d at 1178. Here, The ALJ found Plaintiff was not capable of performing his past relevant work. AR 1628. However, in the November 2016 decision, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds, and he can only occasionally climb

15

ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl. He can do frequent but not constant bilateral handling and fingering. He can have occasional interaction with supervisors and coworkers, and no interaction with the public. He is limited to unskilled work with simple, routine, repetitive tasks that can be easily resumed if the claimant experiences momentary distractions in his ability to concentrate and attend.

While the Court is focused on the ALJ's reasoning in her decision, the ALJ complied with the requirement that "[a]s a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Turning to Plaintiff's specific objection regarding the logic between an ability to interact with family members and a neighbor, and the ability to interact with co-workers, the Court finds this objection unavailing. In the ALJ's decision, she concluded Plaintiff has moderate restrictions in his ability to socialize so the RFC limited him to no interaction with the public and occasional interaction with supervisors and coworkers. AR 1624, 1627. Like the Magistrate Judge, the Court can trace the path of the ALJ's reasoning. "Richard was able to interact with a select group of people (immediate family and he reported in February 2014 that he socialized with a neighbor) in his daily life, and so the ALJ limited him to interaction in a work setting with a select group of people (coworkers and supervisors)." Doc. 15, at 17. Further, the ALJ noted there was no record of evictions, altercations, or severe social isolation. AR 1627. Plaintiff also expressed to Dr. Baukus that "he gets along with others" and Plaintiff was reportedly appropriate and cooperative during the interview. *Id*. Thus, the ALJ logically supported her conclusion with substantial evidence and the Court will not re-weigh the evidence even though Plaintiff claims to not understand the logic of the ALJ's decision.

On a general note, in assessing Plaintiff's RFC, the ALJ properly considered his subjective symptoms as described in the previous section. The ALJ noted that if objective

medical evidence does not substantiate statements regarding the intensity, persistence, or functionally limiting effects of pain or other symptoms, then the ALJ must consider other evidence in the record to determine if the reported symptoms limit the claimant's work abilities. AR 1624. The ALJ concluded that Richard's medically determinable impairments could be reasonably expected to cause his alleged symptoms. *Id*. However, Richard's statements regarding the intensity, persistence, and limiting effects of his medically determinable impairments symptoms were "not *entirely* consistent with the medical evidence or *other evidence* in record for the reasons explained in *this decision*." AR 1624-25 (emphasis added). The ALJ found Plaintiff's reported symptoms of pain, fatigue, and limited motion were credible to the extent that the symptoms limited him to sedentary work rather than light work. AR 1625. Similarly, the ALJ concluded his wife's statements concerning the intensity, persistence, and limiting effects of Richard's symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment, which limited him to sedentary work. AR 1627.

Further, the Court agrees with the Magistrate Judge's remaining discussion of the RFC that the ALJ considered evidence such as his hospital stay, his mental health diagnoses, his subjective complaints along with evidence of normal examinations, his daily activities, and the treatment he received for his mental health to determine the extent of limitation his mental impairments caused which the record, as a whole, supported. *See* 20 C.F.R. § 404.1527(d)(2). In her decision, the ALJ discussed Plaintiff's April 2010 hospital stay following an overdose. The ALJ explained that episodes of decompensation meant each lasted for at least two weeks and Plaintiff had not experienced episodes of decompensation. *See* AR 1623, 1627. The ALJ also described that during treatment in April 2010 hospital stay, Plaintiff reported no history of psychiatric evaluation, depression, or suicide attempts. AR 1626 (citing Exhibits B-30F and B-

33F). In discussing depression and anxiety, the ALJ also included his "reported symptoms of sleep disturbance, decreased energy, feelings of worthlessness, difficulty concentrating, and tearfulness." *Id*. However, she also described examinations that showed "no hallucinations, delusions, further homicidal or suicidal thoughts, intact memory, intact thought processes, grossly intact attention and concentration, cooperation, unremarkable speech and thought processes, no signs of psychosis, denied suicidal or homicidal thoughts, and logical and coherent thought processes." Doc. 15, at 16; *See* AR 1626-27. The record failed to establish a marginal adjustment to the living environment or an inability to function outside a highly supported living environment. AR 1627. ALJ decisions are read as a whole and in reviewing the decision the Court can trace the ALJ's reasoning, which considered the important evidence.

### 5. The ALJ's editing mistake was a harmless error that does not warrant remand

In his last objection captioned "Plaintiff asks the court to reconsider the implications of the ALJ's imprecision in assessing opinion evidence," Plaintiff again argues that due to the ALJ's editing mistake regarding the paragraph about the state agency's opinion, it is impossible for the Court to trace the ALJ's reasoning. Doc. 16, at 6. The Commissioner admits the error but urges that it should not undermine the entire decision because the error was harmless. Doc. 18, at 5.

In his Recommendation and Report, the Magistrate Judge acknowledged the error was unfortunate, and claimants reasonably expect more precision in ALJ decisions. Doc. 15, at 19. However, the ALJ's error was harmless. *Id*. (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ('explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result')). The Magistrate Judge further explained that reviewing courts view the record as a whole; therefore, the Court has the ability to review the previous 2012 decision as well as the 2016 decision

currently under consideration. Doc. 15, at 19 (citing *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014)). In reviewing the record, it was clear "that the ALJ's second paragraph discussing the weight assigned to the state agency was included for purposes of the 2016 Decision." *Id*. In the second paragraph, the ALJ stated the opinions of the state agency physicians were not given significant weight. They did not have the benefit of reviewing the latest medical evidence or assessing whether [Richard]'s statements at hearing are consistent with medical and other evidence of record." AR 1627. The Magistrate Judge found that the contradictory paragraph discussing the weight did not change the fact that "the ALJ properly considered the evidence pertaining to Richard's physical and mental impairments and sufficiently articulated and supported her RFC assessment." Doc. 15, at 19. Further, "it is obvious the ALJ did not give the state agency opinions significant weight where the most recent opinion in April 2011 indicated Richard was able to perform light/unskilled work whereas the ALJ assessed Richard as capable of only sedentary work. *Id.* at 20.

This Court, like the Magistrate Judge, can still trace the ALJ's decision despite her editing error. As Plaintiff emphasizes in his briefs, the standard is that a reviewing court must be able to the trace the ALJ's reasoning such that the decision can be subject to meaningful appellate review. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). The ALJ essentially had the same paragraph in sequential order but the first paragraph was a verbatim iteration of the previous ALJ's determination in 2012 regarding opinion evidence from state agency physicians. It is clear the second paragraph applies to this decision and the ALJ inadvertently added and kept the paragraph from the 2012 decision. This error is akin to a typographical error and the result would be the same even if this case was remanded for the ALJ's to fix the pasting error. Therefore, the

error is harmless, and it does not warrant remand. On this record, the Court finds Plaintiff's assertions of error unconvincing. The Court concludes the ALJ applied the correct legal standards and supported her decisions with substantial evidence.

## CONCLUSION

For the reasons set forth above, the Court adopts the Magistrate Judge's Report and Recommendation (Doc. 15). Plaintiff's Motion (Doc. 11) for Summary Judgment is DENIED, and Defendant's Motion (Doc. 14) for Summary Affirmance is GRANTED. The Commissioner's decision to deny benefits is AFFIRMED.

The Clerk is directed to close the case.

Signed on this 19th day of January, 2021.

> s/James E. Shadid
> James E. Shadid
> United States District Judge